# CHARLESTON

WINTON v. McGRAW.

Submitted February 13, 1906.    Decided February 24, 1906.

1. EVIDENCE—*Parol Evidence—Ambiguous Deed.*

Whether a contract of sale of real estate, executed by the delivery of a deed, conveying the land, was a sale by the acre or a sale in gross, must be ascertained from the terms of the deed, unless it be ambiguous. But, if the deed is ambiguous, parol evidence of the circumstances which surrounded the parties and their situation, when the deed was made, and their conduct in carrying the contract into execution, is admissible, not to prove in point of fact a sale by the acre, but only to aid in construing the deed, and no other kind of parol evidence is admissible for such purpose. (p. 99.)

2. SAME—*Construction of Deed by Parties.*

When, by reason of a positive affirmation in a deed of the quantity of the land conveyed, the deed is ambiguous on its face, as to whether a warranty of quantity was intended by the vendor, parol evidence of the circumstances which surrounded the parties and their situation, when the deed was made, and their conduct in carrying the contract into execution, may be considered in determining, by construction of the deed, whether such implied warranty was intended, but no other parol evidence can be considered. (p. 101.)

3. VENDOR AND PURCHASER—*Deed—Construction—Sale in Gross.*

A deed, ambiguous on its face as to whether the sale was by the acre or in gross, and as to whether an implied warranty of quantity was intended, is *prima facie* a contract of sale in gross and without such warranty. (p. 101.)

4. EVIDENCE—*Parol Evidence—Fraudulent Misrepresentation.*

A positive affirmation in a deed, as to the quantity of the land conveyed by it, is a representation by the grantor upon which the grantee is presumed to have relied, in determining the price he agreed to pay, and, if the quantity actually conveyed turns out to be materially less than that, so represented, a *prima facie* case of fraudulent misrepresentation by the vendor is thereby established, giving the vendee a right to compensation for the deficiency, but all kinds of relevant and material parol evidence is admissible, on behalf of the vendor, to prove that the vendee did not rely upon the representation, or believe it to be true, and was not influenced by it in agreeing to pay the price stipulated, but not to contradict the statement made in the deed; and, on behalf of the vendee, to prove that he did rely upon the statement and was injured thereby. In such case, the issue is one of fact, as to intent, without any limi

tation upon relevant parol evidence, except that the representation cannot be denied, as such denial would be a contradiction of the written contract. (p. 103.)

Appeal from Circuit Court, Pocahontas County,

Bill by W. W. Winton and others, executors of Edward Dolph, against John T. McGraw and others. Decree for plaintiffs, and McGraw appeals.

*Affirmed.*

Dent & Dent, for appellant.

H. S. Rucker, for appellees.

Poffenbarger, Judge:

An appeal, by John T. McGraw, from a decree of the circuit court of Pocahontas county, in a suit brought against him and others, by W. W. Winton and others, executors of Edward Dolph, deceased, for the enforcement of a vendor's lien against a certain tract of land, in the bill. and proceedings mentioned and described, presents the question, whether said appellant is entitled to an abatement from the purchase money, for deficiency in the quantity of the land, on any one of the three following theories: a sale by the acre, a sale in gross with warranty as to quantity, and fraud by misrepresentation, on the part of the vendors, as to quantity, believed to be true and relied upon by the vendee; the tract of land having been described in the deed as containing 500 acres and proved, by survey, to have actually contained 241 1-2 acres. The decree appealed from denied the relief prayed for in the answer, and required the appellant to pay the whole amount due on the contract price.

Whether the sale was by the acre or in gross, is a question of construction of the deed. In construing it, parol evidence is admissible, only when the deed is ambiguous, and then only certain kinds of such evidence can be considered. *Crislip* v. *Cain*, 19 W. Va. 438, followed by a large number of later cases, which need not be cited, established the rule that a deed, specifying positively a certain number of acres as the quantity of the land conveyed, is ambiguous on its face as to whether the sale is by the acre or in gross, if the amount of purchase money recited in it is an exact multiple of the number of acres specified, but is, nevertheless, *prima facie* a

sale in gross, wherefore the burden of proof rests upon the party alleging it to be a sale by the acre. The only evidence admissible on such an issue is that of the circumstances which surrounded the parties and their situation, when the deed was made, and their conduct in carrying the contract into execution. *Crislip* v. *Cain*, cited; *Hansford* v. *Coal Co.*, 22 W. Va. 70; *Newman* v. *Kay*, 49 S. E. 926. The grantors resided in the state of Pennsylvania, far distant from the location of the land, had no personal knowledge of its quantity and relied solely upon a plat and other documentary evidence for their information. The vendee, as shown by a recital in the deed, resided at Grafton, in Taylor county, a long distance from the land, and there is nothing in the record to indicate that he knew anything of its quantity. Neither party had had any surveying done, or had ever seen the land, so far as this record indicates. The one thousand dollar note, given for the balance of purchase money, bears date April 30, 1892, and became due on the 10th day of May, 1893. This suit was brought in September, 1894, and, under an order made in it at the October term, 1894, a survey of the land was made whereby its exact quantity was ascertained. But the decree was not entered until the January term, 1905. In the meantime, there was considerable correspondence between the parties in an effort, it seems, to adjust the matter by agreement. By deed bearing date July 7, 1892, McGraw conveyed the land to Henry H. Craig, Eli M. Upton, John M. Beckley and Alfred Ames Howlett, as a tract of 550 acres with a covenant of general warranty. He raised no question about the quantity until long after he had sold the land. As late as April, 1894, he requested the holders of the note to send it to Grafton for payment, without suggesting any deficiency in quantity or making any other objection. This is all the evidence found in the record that could possibly be deemed admissible in construing the deed. By reference to *Crislip* v. *Cain*. cited, *Hansford* v. *Coal Co.*, 22 W. Va. 70, and *Newman* v. *Kay*, 57 W. Va. 98, for illustration of the application of the rules of law to such evidence, upon such an issue, it will be seen that this evidence is wholly insufficient to establish the proposition.

The next question presented, namely, whether, by the specification of a certain number of acres in the deed, without

any qualifying phrase, such as "more or less," or "estimated to be," or "supposed to contain," the vendor intended to warrant the quantity so specified, is also a question of construction. Such specification renders the deed ambiguous on its face as to whether such warranty was intended, but it is *prima facie* a deed without such warranty, and the burden of proof rests upon the party alleging the warranty. *Crislip* v. *Cain, supra.* The rule enunciated in that case, is stated in point 18 of the syllabus as follows: "But the specification of the quantity exactly, without the addition of the words, 'more or less' or any other qualifying words, renders the deed or contract ambiguous as to whether the parties did or did not intend, that the vendor by such positive affirmation of quantity should be regarded as making a warranty, that there was this quantity." In *Hansford* v. *Coal Co.*, 22 W. Va. 70, the rule was stated as follows: "Where a vendor by his deed, for an entire sum, conveys a tract of land by metes and bounds, stating therein the quantity at a definite number of acres, this on its face is a sale not by the acre, but in gross and *prima facie* without any implied warranty of the quantity." On the issue as to whether the parties intended a warranty of quantity, the same, and only the same, kind of evidence is admissible as may be considered for the purpose of showing, in case of ambiguity, that the sale was by the acre. This being true, it is unnecessary to review the evidence again in this connection; for it is fully as impotent in this instance as in the other.

The only remaining inquiry is whether there was a misrepresentation by the vendors as to the quantity of the land, believed, by the vendee, to be true, and relied upon by him as a true statement. To determine whether there was a representation, as to quantity, it is unnecessary to resort to parol evidence. The representation appears on the face of the deed. That representation makes a *prima facie* case which the vendors must overthrow, by showing that the vendee did not rely upon it, believing it to be true, and was not influenced by it, in agreeing to pay the price stipulated, else they are held to be guilty of, at the least, constructive fraud, and the vendee is entitled to relief on that ground. In this aspect of the case, the presence or absence of the qualifying words, "more or less," is immaterial. In substance and ef-

fect, the representation is held to be as positive an affirmation, when such qualifying phrase is used, as when it is not used. These propositions are asserted in *Crislip* v. *Cain*, in points 15, 16 and 17 of the syllabus, which read as follows:

"15. But the vendee of land has a right to rely on the statement of the vendor as to the number of acres in a tract of land, which he sells, and naturally does rely upon it; and as the quantity of land is generally a material matter in the purchase of a tract of land, it ought *prima facie* to be regarded, that the vendee was induced to pay or agree to pay the price named in the contract or deed because of the statement in it by the vendor of the number of acres, which statement, if positive, should be regarded as a statement made on the personal knowledge of the vendor; and therefore in the absence of all other proof the vendor must be regarded as guilty of a fraud on the vendee; and a court of equity should for this reason require the vendor to make a proportionate abatement from the purchase-money."

"16. This *prima facie* case of fraud can not be rebutted by the vendor by simply proving, that he believed, that the quantity of land named in the deed was the true quantity; for if he did not know the true quantity, he ought to have qualified his positive statement of the quantity by saying, that it was the estimated or supposed quantity, or in some other manner. But this *prima facie* case of fraud on the part of the vendor can be rebutted by parol proof showing, that the vendee did not in point of fact rely on the vendor's statement of the quantity and was not induced by that statement to buy at the price, which he paid."

"17. The law as above stated would not be varied by the statement of the vendor in the contract or deed, that the land contained a specified number of acres more or less, as this statement would be no less positive than the other; for the words 'more or less' are not construed to mean 'as estimated,' 'as supposed,' but are construed to mean *about* the specified number of acres and are considered or designed to cover only such small errors of surveying, as usually occur in surveys."

On this issue of actual or constructive fraud, the rule as to the evidence is different also. The whole field of relevant and material parol evidence is open on such issue. "In such

a suit the court can consider all sorts of parol evidence either to establish or rebut the alleged fraud of the vendor or to prove or disprove, that the statement of the vendor of the number of acres in the tract sold in gross was relied on by the vendee, or that it was not relied upon, or that by it he was or was not induced to purchase at the gross price, which he agreed to pay. The vendee in such a case would be permitted to prove by parol evidence, that the price named in the written contract or deed was arrived at by multiplying the number of acres specified by a certain price per acre, which, by such parol proof it may be shown, he was willing to pay, and the vendor to receive, this being direct and positive proof going strongly to establish (taken in connection with the price named in the contract or deed) that the vendee did in point of fact rely on the statement of the vendor as to the number of acres in the tract and was thereby induced to pay the price, which he agreed to pay, for the tract. This evidence, though it assumes the form of proving, that the land was sold by the acre, is admissible not to contradict the written contract or deed but to prove, that the vendor's statement of the quantity of the land did in point of fact deceive the vendee to his injury, and in this way to establish the fact at issue in a suit of this character, that is, the fraud of the vendor." *Crislip* v. *Cain*, 19 W. Va. 438, syl. pt. 21.

The appellant offered no parol evidence whatever. He relies solely upon the *prima facie* case made by the representation in the deed. The parol evidence, introduced by the appellees, discloses that there was a preliminary contract of sale executed by them as parties of the first part, and J. W. Heavener, as party of the second part; that Heavener came to their homes at Wilkesbarre and Scranton, Pennsylvania, for the purpose of buying said tract of land; that he represented the purchase to be on behalf of John T. McGraw; that he was apparently very anxious to make the purchase; that after considerable discussion as to the price, they "split the difference," agreeing on $2250.00; that Heavener represented McGraw's desire to purchase the land to be due to his wish to make up a large body of land he was then getting together in Pocahontas county; and that the deed was drawn by some person other than the grantors and sent to them from West Virginia. The contract bears date April 29, 1892,

and the deed, as printed in the record, April 13, 1892.    Mc-Graw did sell the land in connection with other land, 11,801 acres in all, for the sum of $70,806.00, as is disclosed by a copy of his deed exhibited with the bill.  Nothing in the contract indicates an intention to make a sale by the acre, but it does specify the quantity as 500 acres, more or less, and refers to a plat described as "plot or map of P. W. Shafer of Pottsville, Penna., a blue print of which is signed by the parties and is in the keeping of said Isaac P. Hand at Wilkes-barre, Pa."    E. S. Dolph, one of the appellees, testified as follows: "We told Major Heavener that in the sale of this lot he would take what was within the boundaries, be the acreage more or less, as we had no knowledge of the acreage beyond that shown by the map.  .We had never been on the ground ourselves, nor had we ever procured a survey; that we would sell him lot No. 21 for the lump sum of Twenty two hundred and fifty dollars, and he would take his chances as to its holding out as he was undoubtedly much more familiar with the land than we were.    Major Heavener asked to have a deed made for five hundred acres as shown on the map.  We told him this we could not do, as we did now know the actual acreage, but that we would  put in the contract the words 'more or less' in connection with the acreage."

Viewing this testimony as a whole, it cannot be doubted that the *prima facie* case, made against the vendors by the positive affirmation of quantity, expressed on the face of the deed, is completely overthrown.  Only a few days elapsed between the execution of the contract and the deed, and the latter was executed to McGraw in conformity with the representation of Heavener to whom the contract was given.  The positive testimony as to the relation of these parties is not denied.    If Mr. McGraw was not the real purchaser, as represented by Heavener, he could have taken the witness stand and denied it, and, if he wished to controvert the testimony as to the representation of Heavener, he could, for aught that appears in this record, have put Heavener on the stand to deny that.    The support which this testimony derives from the silence of the appellant is strengthened by the fact, that McGraw used this land just as Heavener said he intended to use it.    Moreover, it is highly improbable that these men would make a contract of sale with one man and

convey the land to another in a period of about a week, without the consent of the vendee named in the contract. The only thing, disclosed by the evidence, apparently inconsistent with this conclusion, is that the date of the deed is prior to that of the contract, but this circumstance is not of itself sufficient to overthrow the testimony or the inference arising from it. It is possible to conceive why the grantee might desire the date of the deed to appear to be earlier than it in fact was. But there is doubt as to what the actual date of the deed was. The certificate of acknowledgment describes it as being the 30th day of April instead of the 13th. The fact that the certificate of acknowledgment bears date on the 5th day of May, 1892, indicates that it was dated back for some purpose if its date is April 13th. It was not delivered until after acknowledgment, and it probably was delivered immediately after acknowledgment. That occurred on the 5th day of May. The contract was dated the 29th day of April. Hence, the whole matter was transacted within a week. The circumstances, therefore, point unerringly and irresistably to the relationship of principal and agent or trustee and *cestui que trust* between McGraw and Heavener, in confirmation of the testimony of Dolph. McGraw, therefore, through his agent, knew that the representation was made without personal knowledge on the part of the vendors, and without any intention that he should rely upon it. Knowing that it was made without personal knowledge, he had no ground for believing in the truth of it. And he was informed of the intention of the vendors that he should not rely upon it, and that he should take the risk as to the quantity, and he agreed to do so. This completely overthrows the *prima facie* case established by the representation in the deed.

In view of the foregoing principles and conclusions, the decree is free from error and will be affirmed.

*Affirmed.*