# CHARLESTON.

## WILLIAM B. STUMP *et al.* v. JOHN Y. HITE.

Submitted April 14, 1920.    Decided April 20, 1920.

1. EVIDENCE—*Where Contract Ambiguous, Parol Evidence Admissible to Show Fraud in Representation of Acreage.*

   Where there has been a sale and conveyance of the timber only on a tract of land, and in the contract and deed there is a representation, not a warranty, that the tract described by metes and bounds contains a certain number of acres, and the purchaser claims an abatement of purchase money because of deficiency in acreage, parol evidence, because of the ambiguity in the contract and deed, is admissible on the question whether actual or constructive fraud was intended by the representation of acreage of timber sold. (p. 236).

2. LOGS AND LOGGING—*Where Buyer Had Estimated Timber, Equity Would not Decree an Abatement for Deficiency in Acreage.*

Where the consideration for the timber so sold and conveyed is a gross sum, and the evidence shows the purchaser did not rely on the representations of the vendor in the contract and deed, but had the timber on the land cruised and an estimate made of the kinds and quantity of lumber and tanbark that could be manufactured from the timber actually on the land, a court of equity should not decree any abatement of the purchase money on account of deficiency of acreage. (p. 236).

3. SAME—*Equity Will Give Judgment for Balance of Price, Though, Pending Suit to Enforce Lien Timber Has Been Removed.*

In a suit by a vendor of timber against his vendee to enforce his lien for unpaid purchase money, and pending the suit and before final decree the timber sold has all been removed from the land, equity nevertheless, having acquired jurisdiction in the beginning, will go on and give a final and personal decree against the defendant for the balance of the purchase money found due the plaintiff. (p. 237).

Appeal from Circuit Court, Hampshire County.

Suit by William B. Stump and others, administrators, etc., against John Y. Hite. Decree for plaintiff William B. Stump, and defendant appeals.

*Affirmed.*

*W. S. Meredith, G. K. Kump, Robert White* and *Geo. H. Williams,* for appellants.

*John J. Cornwell* and *J. S. Zimmerman,* for appellee.

MILLER, JUDGE:

The decree below denied defendant any abatement from the purchase money on account of the alleged shortage of acreage in the land on which the timber purchased by him was situated, and adjudged against him in favor of plaintiffs the balance of purchase money remaining unpaid, amounting with interest to the date of the decree to $9,636.05, with interest thereon from that date, with costs.

Neither the option contract pleaded nor the deed made pursuant thereto contained any warranty of acreage, but there

was warranty of title and representation in the contract and deed that the tracts described aggregating about 7,000 acres, and individually, the first, 6218 acres, the second, 258 acres, the third, 219 acres, the fourth, 122 acres, and the fifth, 218 acres, the first known as the Means tract, and the other tracts described as the "Lochner Lands", the deed describing said tracts together by metes and bounds as an inclusive boundary.

The defendant alleges in his answer that at the time of the purchase of said timber the vendors represented to him that they owned about 7000 acres of land covered by valuable timber, and that he believed and relied thereon when he agreed to pay for said timber the sum of $31,750.00, and that by a subsequent survey of said land it was found to contain not over 5770 acres, a difference of 1230 acres, and because of which he claims a proportionate abatement of the purchase money.

The evidence conclusively shows that defendant never met plaintiffs prior to the purchase and date of the deed, and that no agreements or representations as to the acreage were made to him other than are found in the contract and deed. Besides, the evidence is conclusive on another point, namely, that defendant did not rely on the representations in the deed or contract, for, after taking the option and before deed made or any of the purchase money paid, he employed two expert cruisers or estimators to go upon the land and estimate and report the amount and various kinds of timber and the amount of tanbark that could be gotten off the land. These cruisers were surveyors but did not make any survey of the entire acreage; they did estimate the actual number of acres on which there was any timber capable of being manufactured into lumber and made a report to defendant, their estimate of timber acreage being 4200 acres, not 7000 acres supposed to be contained in the outside boundaries, the estimate of timber of all kinds being 19,500,000 feet, and of chestnut bark, 13,500 cords. According to one of these estimators, the other not being produced as a witness, the estimate of timber was 4642 feet per acre; and the witness says he was told by defendant after he began operation on the land that he was getting between five and six thousand feet to the acre.

86 W. Va.

On this showing was defendant entitled to any abatement from the purchase price of the timber? We have to bear in mind in this case that the subject matter of the contract and deed was the timber, not the land itself. Defendant knew that the whole of the tract was not covered with timber, and he knew through his estimators, if not from other sources, that only about three-fifths of the land had any kind of merchantable timber thereon. Nor is it anywhere alleged or proven that the amount of timber or tanbark on the land fell short of the estimate made and reported to defendant. The sole complaint is that the tracts of land so described by metes and bounds fell short in acreage. And the evidence shows that when the shortage of acreage was ascertained by defendant, and before he had done anything on the land to his prejudice, the plaintiffs proposed, if he was not satisfied, to rescind the contract and to return to him all the purchase money paid with interest thereon, but which offer defendant declined.

It is doubtful whether the general rules applicable to the sale and conveyance of land, whether in gross or by the acre, are pertinent and controlling when the subject of the sale and conveyance is the timber, or coal, or other substance of the land. It is rarely, if ever, that a tract of land is all covered by timber; it was not so in this case; and evidently defendant did not understand he was contracting for 7000 acres of timber, but for whatever timber was on the land and within the inclusive boundaries thereof. But if these general rules be applicable, according to our cases the deed and contract containing only representation as to quantity of land, was at most only ambiguous on its face, so as to let in parol evidence of the circumstances surrounding the parties and of their intentions when the deed was made, so as to determine whether an implied warranty of acreage of timber was intended. *Winton* v. *McGraw,* 60 W. Va. 98, and cases cited.

Applying this rule to the allegations and proof in this case, we can not say the decree below was erroneous in adjudging the issue in favor of plaintiffs. Indeed we are of opinion that it would have been error to decree otherwise. Apropos to the inquiry suggested as to the applicability of the general rule to

sales and conveyances of timber, we decided in *Light* v. *Grant,* 73 W. Va. 56, 51 L. R. A. (N. S.) 792, that the grantee of coal in place in a deed conveying all the coal in a tract of land can not rescind the sale merely because the coal area is not as large as he had hoped or expected to obtain, provided there is a substantial quantity of coal in the land; and if not permitted to rescind in such cases, it follows that a purchaser would not be entitled to an abatement of the purchase money. It is not claimed that the consideration for the timber, $31,750.00, is the exact multiple of the number of acres of timber on the land or acreage called for in the deed. The consideration is a gross sum to be paid for the timber on the land, not for acres of land. The prior decisions of the court are so ample and complete on the only issue here involved that we deem it unnecessary to extend this discussion.

The only other point we will notice is the question as to the jurisdiction of the court to pronounce the decree against defendant. The court in the beginning had jurisdiction of the suit to enforce the lien for purchase money; it did not lose that jurisdiction because pending the suit the timber, the subject of the lien, may have been removed from the land by defendant. The familiar rule that having once acquired jurisdiction for any purpose, equity will go on and do complete justice, is certainly applicable in this case.

For the foregoing reasons we will affirm the decree.

*Affirmed.*